**UNITED STATES DISTICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN DOE, a Sex Trafficked Individual,<br><br>Plaintiff,<br><br>vs.<br><br>HARBORSIDE HOTEL LLC; HYATT HOTEL CORPORATION; MARRIOTT INTERNATIONAL, INC., f/k/a STARWOOD HOTELS & RESORTS, INC.; SAM & RAM CORP.; SUPER 8 WORLDWIDE, INC.; WYNDHAM HOTELS & RESORTS, INC.; TOM ROES 1-100 (names being fictitious); and ABC CORPORATIONS 1-100 (names being fictitious),<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : : : : | **Case No.:** 2:25-CV-1323<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**I.**

**PRELIMINARY STATEMENT**

This case is brought to shed light on a dark, wicked corner of our society—the enslavement of our most vulnerable members into the commercial sex industry. Plaintiff, John Doe, was trafficked for sex for over a decade, beginning when he was just 14 years old. The Defendants are hotels, motels, and nightclubs and their respective operators, who were instrumental, if not necessary, participants in a sex trafficking venture that took way over a decade of Plaintiff's life and has left him physically maimed and psychologically scarred.  This case is brought to hold the hotels and motels that knowingly benefited from the horrors inflicted on Plaintiff to account.

Tom Roe, a notorious sex trafficker, found Plaintiff wandering the streets after he ran away from home fleeing an abusive stepfather. Tom Roe took Plaintiff in, offered him shelter, and then forced Plaintiff into the commercial sex trade.

Tom Roe persistently threatened, intimidated, defrauded, manipulated, drugged, and manhandled Plaintiff to keep him pliant. Tom Roe and his associates told Plaintiff and the other trafficking victims they held captive that they would be killed if they tried to escape. This was no idle threat. After Plaintiff managed to escape when one of his captors let his guard down, Tom Roe tracked Plaintiff down and attempted to kill Plaintiff by running him over with his car, which resulted in the amputation of Plaintiff's leg.

Tom Roe's decade-long exploitation of Plaintiff would not have been possible without the available network of hotels, motels, and nightclubs who willingly participated by providing the place and opportunity for his near-daily exploitation.

Other perpetrators of and participants in these crimes will be held to account in different ways and in different fora. This case is about the hotel and motel owners knowingly profiting from a sex trafficking venture with Tom Roe and his associates. Defendants were aware of what was happening; yet they knowingly turned a blind eye to the reality because it was in their financial interests to do so.

## II.

## THE PARTIES

1.      Plaintiff, JOHN DOE, is a resident of Illinois. Due to the sensitive, private, and demonstrably retaliatory nature of the allegations contained herein, the Plaintiff requests this District Court grant a protective order pursuant to Federal Rule of Civil Procedure 26(c) to permit him to proceed under a pseudonym and to ensure Defendants keep Plaintiff's identity confidential

throughout the pendency of the lawsuit and afterward.[1]  Plaintiff also intends to file a formal motion to proceed under a pseudonym after completing service of the Complaint on Defendants to determine whether the Defendants would oppose Plaintiff's request to proceed under a pseudonym.

2.      Defendant, HARBORSIDE HOTEL LLC ("Harborside Hotel"), is a Delaware limited liability company. It owns the Hyatt Regency Jersey City on the Hudson ("Jersey City Hyatt"), which is located at 2 Exchange Place, Jersey City, New Jersey 07032. It can be served with process by serving its registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

3.      Defendant, HYATT HOTEL CORPORATION, is a Delaware corporation. Its principal place of business is located at 150 N. Riverside Plaza, Chicago, Illinois 60606. It can be served with process by serving Margaret C. Egan, Executive Vice President, General Counsel and

---

[1] Tom Roe and his associates trafficked Plaintiff as both a minor and as an adult from approximately May 2004 through December 2021. In addition to being a victim of a "severe form[] of trafficking" as it is defined under 22 U.S.C.S. §7102(11), Plaintiff was also "caused to engage in commercial sex act[s]" for years thereafter. *See* 18 U.S.C.S. §1591(a). Federal law considers victims of sex trafficking to be the victims of organized crime entitled to witness protection. *See* 18 U.S.C. § 1594(g) ("Witness Protection - Any violation of this chapter shall be considered an organized criminal activity or other serious offense for the purposes of application of chapter 224"). In cases where the Plaintiff has demonstrated a need for pseudonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b) and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c) to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Doe v. Megless*, 654 F.3d 404, 409-410 (3d Cir. 2011); *see also Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000) (recognizing the Ninth Circuit permits parties to use pseudonyms when disclosure of a name "is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment); *see also Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (the District Court found that the stigma of mental illness was enough to permit the plaintiff to proceed under a pseudonym); *see also Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015) (finding that a case involving exotic dancers because of the social stigma of such acts met the standards set by the Ninth Circuit to proceed under a pseudonym).

Secretary, 150 N. Riverside Plaza, Chicago, Illinois 60606.  Upon information and belief, at all relevant times it was owned and operated by the Pritzker Family.

4. Defendant, MARRIOTT INTERNATIONAL, INC. FORMERLY KNOWN AS STARWOOD HOTELS & RESORTS INC. ("Marriott"), is a Delaware corporation. It owns and operates the W-Hoboken Hotel, which is located at 225 River Street, Hoboken, New Jersey 07030. It is headquartered at 7750 Wisconsin Avenue, Bethesda, Maryland 20814. On information and belief, Marriott is the successor in interest and liability to the entity which owned and operated the W-Hoboken during the relevant timeframe.

5. Defendant, SAM & RAM CORP., is a Missouri corporation.  It owns and operates the Super 8 Bridgeton Missouri.  On information and belief, Defendant, SAM & RAM CORP., can be served via its registered agent, Shams Mirza, located at 527 Arbor Meadow Drive, Ballwin, Missouri 63021.

6. Upon information and belief, Defendant, SUPER 8 WORLDWIDE, INC., is a New Jersey corporation and is a subsidiary of Defendant, WYNDHAM HOTELS & RESORTS, INC. Defendant, SUPER 8 WORLDWIDE, INC., maintains a principal place of business at and is located at 22 Sylvan Way, Parsippany, New Jersey 07054. It may be served at its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054.

7. Defendant, WYNDHAM HOTELS & RESORTS, INC. ("Wyndham"), is a Delaware corporation. Wyndham's principal place of business is located at 22 Sylvan Way, Parsippany, New Jersey 07054. It may be served at its principal place of business located at 22 Sylvan Way, Parsippany, New Jersey 07054.

8. Defendants, TOM ROES 1-100, are fictitious individuals not yet known.

9.      Defendants, ABC CORPORATIONS 1-100, are fictitious businesses and corporations not yet known.

### III.

### JURISDICTION & VENUE

10.     This Court has subject matter jurisdiction of this matter under 28 U.S.C. §1331, 28 U.S.C. §1965, 18 U.S.C. §1595(a), and 28 U.S.C. §1367.

11.     This Court has personal jurisdiction over all Defendants because they are citizens of New Jersey or regularly conduct business within the State of New Jersey, or because their acts or omissions give rise to the causes of action occurred in New Jersey.

12.     Venue is proper in this District because the Party Defendants are either domiciled in this District or regularly conduct business in this District, and a substantial number of the acts allegedly occurred in this District.

### IV.

### FACTUAL ALLEGATIONS

**A.    PLAINTIFF IS ENSLAVED BY A SEX TRAFFICKING RING**

13.     Plaintiff ran away from home in the late winter of 2004 around his 14th birthday because he was being sexually abused by his stepfather.

14.     That night, Tom Roe, who led a sex trafficking ring, found Plaintiff wandering the cold streets in nothing but his pajamas and slippers.

15.     Tom Roe offered Plaintiff shelter and brought him to a house where another dozen or so young men and women were enslaved—many of them also minors.

16.     Tom Roe started sexually abusing Plaintiff, and then began trafficking him shortly thereafter, along with the other victims in the house who were already being trafficked.

17.     Tom Roe worked with a team of traffickers (the "Gang"), who were routinely armed. Tom Roe and his team routinely threatened to maim or kill any of the victims who tried to escape. And many times when one of them tried to escape, Plaintiff witnessed Tom Roe and his accomplices torture them by burning them with cigarettes and curling irons, beating them, and putting guns to their heads, which caused Plaintiff to fear for his life and forced him into compliance.

18.     Plaintiff suffered this same torment and trauma from Tom Roe and his Gang members when he tried to escape on multiple occasions.

19.     Tom Roe and the other Gang members weaponized access to food to keep their victims, including Plaintiff, compliant. The traffickers provided the victims with only the bare minimum needed to survive; Plaintiff was emaciated during the entire decade of his enslavement, as were the other victims. The least act of defiance would result in the traffickers withholding food, and the victims would often go days, and sometimes a week or more, without being fed.

20.     Tom Roe and the Gang operated several different trafficking schemes. Most commonly, someone from the Gang would rent a block of rooms at a hotel. A trafficking victim would be assigned to each room and was forced to provide commercial sex to a series of johns, as many as 20 in a day.

21.     The hotels would commonly provide room blocks at the end of corridors or on empty or near empty floors to limit visibility other hotel guests had into the commercial sex trafficking that was going on.

22.     Tom Roe and the other Gang members would also typically arrange with the hotels to have cleaning staff clean and sanitize the rooms between each commercial sex transaction.

23.    Hotel staff would often help connect customers with the Gang to expand their joint venture by arranging for commercial sex.

24.    Tom Roe also authorized discount rates for commercial sex for hotel staff, which encouraged them to participate in the commercial sex joint venture, which they often did.

25.    Tom Roe would also require his victim to provide sex to hotel staff members in exchange for free hotel rooms.

26.    The Gang kept Plaintiff and the other victims pliant by forcing them to drink drug-laced beverages whenever they were providing commercial sex.

27.    One of the Gang members was always present to provide "security" at the time Plaintiff and the other victims engaged in the arranged commercial sex acts.

28.    These Gang members were also typically armed and prepared to shoot on sight any of their trafficking victims who tried to escape. They commonly kept guard in the hallway where the room blocks were located, in the bathrooms of the used rooms, or in an adjoining room.

29.    These Gang members would also often collect cash from the customers in the hallways and escort the customers from the hotel lobby to the rooms and back.

30.    In another scheme, the Gang members would load the trafficking victims in a van and park near a downtown hotel district to wait for arrangements to be made. A Gang member would then bring one of the trafficking victims to a hotel to meet with a customer. The Gang would then collect the money from the customer, wait for the victim to provide commercial sex to the customer, and then escort the victim back to the van to await further dispatch.

31.    Often, the Gang would have arranged with hotel staff to bring the victim in and out through a back door or employee entrance to avoid the scrutiny of other guests. In other instances,

the Gang acquired staff uniforms from some of the hotels that the victim would wear in and out of the hotel to disguise the true nature of their business from other hotel guests.

32.     In another scheme, the Gang would bring the trafficking victims to clubs in a resort town to provide commercial sex acts. The Gang would work with the club's doormen, bartenders, and security guards to identify customers and arrange commercial sex with them.

33.     After identifying a potential customer, a club employee would signal to a Gang member for him to parade the victims for the customer's selection. Once selected, the victim would provide commercial sex to the customer in a club bathroom, which would be guarded by club security while they were engaged in the commercial sex act, or in another section of the club reserved for sexual encounters. In this scheme, the club's employees collected payment from the customers and then turned the money over to one of the Gang members.

34.     To maintain control over their victims, Tom Roe and the Gang routinely refused to permit their victims to access medical care at doctor's offices, clinics, or hospitals. When one of the victims got sick, was injured, or contracted a sexually transmitted disease, Tom Roe or one of the other Gang members arranged for medical personnel to visit the victims at the house where Tom Roe kept them.

35.     Plaintiff is informed and believes that Tom Roe and his accomplices bribed these medical professionals to provide off-the-books medical care to their trafficking victims.

36.     Tom Roe and the other Gang members forced Plaintiff to provide commercial sex continuously from around January 2005 until April 2015.

37.     Plaintiff was initially trafficked in Chicago, Illinois, from January 2005 through December 2006.

38.     Plaintiff was trafficked in South Bend, Indiana, from January 2007 through July 2007.

39.     Plaintiff was trafficked in the New York City metropolitan area, including within New Jersey, from August 2007 through November 2009.

40.     Plaintiff was trafficked in Florida from December 2009 through December 2011, primarily in Miami, the Cocoa Beach area, and in Key West.

41.     Plaintiff was then trafficked in Bridgeton, Missouri, from June 2014 through November 2014.

42.     Plaintiff was then transported back to Chicago, Illinois, yet again where he was trafficked from December 2014 through April 2015, when he managed to escape the sex trafficking ring.

43.     Though he escaped, Plaintiff is still not free from his torment. On one occasion, Tom Roe tracked Plaintiff down and attempted to kidnap him on the streets of Chicago. Thankfully, a bystander witnessed what was happening, began screaming, and Tom Roe fled the scene.

44.     In another instance, Tom Roe found Plaintiff and struck him with his car, which resulted in the amputation of Plaintiff's legs.

45.     To this day, Plaintiff fears for his life and retribution from Tom Roe and the Gang.

46.     Plaintiff experienced prolonged and severe psychological trauma as a direct result of his trafficking, which fundamentally altered his ability to process information, assess legal options, and recognize his right to seek justice.

47.     Scientific research on sex trafficking victims demonstrates that chronic exposure to trauma, coercion, and psychological manipulation can disrupt cognitive processing, leading to long-term deficits in decision making, memory, and comprehension of one's legal rights.

48. Studies show that trafficking victims experience heightened levels of cortisol and other stress hormones, which impair the brain's ability to process risk, recall information, and make complex decisions, particularly those involving self advocacy and legal recourse.

49. A polyvictim is a person who has endured multiple forms of victimization—such as physical violence, sexual abuse, psychological coercion, and social isolation.

50. The cumulative impact of polyvictimization compounds psychological distress, impairing Plaintiff's ability to take legal action and exacerbating his feelings of helplessness.

51. Victims of polyvictimization often experience severe emotional dysregulation, difficulty trusting authority figures, and an inability to advocate for themselves.

52. Traffickers often employ entrapment and enmeshment schemes that manipulate their victims' perception of reality, fostering dependence on their exploiters while simultaneously eroding their sense of self and agency.

53. Victims of human trafficking commonly develop learned helplessness, a psychological state in which repeated victimization conditions an individual to believe that seeking help is futile or will result in further harm.

54. Plaintiff was trafficked for over a decade, during which time he was subjected to ongoing physical abuse, threats, coercion, and intimidation that prevented him from asserting his rights. Tom Roe and his associates ensured Plaintiff's compliance through violence, threats of death, psychological manipulation, and forced drug use, rendering Plaintiff incapable of seeking legal recourse or recognizing the viability of his claims.

55. Plaintiff was subjected to ongoing threats, intimidation, and coercion by his traffickers, which instilled a persistent fear of retaliation that continued long after his exploitation ended, discouraging him from taking legal action.

56.    On information and belief, Plaintiff suffered one or more of these psychological injuries.

57.    As a result, Plaintiff did not recognize the full extent of his legal rights or the involvement of the hotel defendants in facilitating his exploitation until recently.

58.    On information and belief, the extreme and sustained trauma Plaintiff endured fundamentally altered his brain function and decision-making abilities, as evidenced by research demonstrating that long-term exposure to trafficking environments disrupts neural pathways related to judgment, reasoning, and the ability to take independent action.

59.    Due to this conditioned response, Plaintiff did not believe that pursuing legal claims against the hotel defendants was a viable option until he was able to receive legal assistance.

60.    Further, Defendants' active concealment of their participation in and benefit from sex trafficking prevented Plaintiff from discovering their culpability. Defendants failed to document, report, or take action on clear indicators of trafficking occurring on their premises. Plaintiff, lacking access to information about his legal rights and suffering from severe psychological trauma, was unaware that he had claims against Defendants until recently.

61.    Plaintiff has acted diligently since learning of his legal rights and seeking justice. Upon escaping his traffickers and reaching a place of relative safety, Plaintiff began working to rebuild his life. However, his ability to understand and pursue legal action was severely impaired by the psychological harms he suffered. Only recently, with the assistance of counsel, did Plaintiff become aware of the extent of Defendants' participation in his trafficking and their potential liability under the law.

62.     This Complaint will focus on the trafficking that occurred at the hotels in New Jersey, or with hotel defendants that have a connection with New Jersey or similar timeframes for indispensable parties.

**B.  Hyatt Regency Jersey City on the Hudson**

63.     In August 2007, the Gang transported Plaintiff and their other trafficking victims to New York City where they were continually trafficked for the following 26 months in the New York metropolitan area, including within the state of New Jersey,

64.      During this period, Plaintiff was trafficked out of the Hyatt Regency Jersey City on the Hudson ("Jersey City Hyatt").

65.     Upon information and belief, during the time that Plaintiff was trafficked the Jersey City Hyatt was owned or controlled by Defendants, Harborside Hotel LLC and Hyatt Hotel Corporation.

66.     Defendants, Harborside Hotel LLC and Hyatt Hotel Corporation, along with the unnamed and unidentified employees thereof ("Jersey City Hyatt Defendants"), formed a joint business venture that participated in Tom Roe's sex trafficking scheme. The hotel employees involved in this venture include, but are not limited to, the front desk workers, the security staff, housekeeping and janitorial staff, maintenance workers, accounting persons, valet staff, and managers. At all relevant times, the above Jersey City Hyatt Defendants were the agents of each other, if not the employees of each other, and were acting in the scope of their agency or employment.

67.     The Jersey City Hyatt was managed by Defendant, Hyatt Hotels Corporation, during the relevant time frame.

68.     At all relevant times, the Jersey City Hyatt Defendants had a continuous repeat business relationship with Tom Roe wherein they rented multiple rooms to Tom Roe at a time to knowingly facilitate—at a minimum—a prostitution scheme that they knew or should have known involved victims who were coerced into participating and thus were the victims of sex trafficking.

69.     Plaintiff was a minor for a portion of the time he was trafficked out of the Jersey City Hyatt.

70.     Tom Roe and his associates frequently would book a block of rooms for an extended period in which to traffic the victims.

71.     One of the hotel's maintenance workers would routinely escort the Gang and their victims, including Plaintiff, through one of the back door service entrances. Plaintiff understood that this was done to avoid scrutiny from other hotel guests.

72.     A victim would be assigned to each room where each would provide paid commercial sex acts to multiple clients every day they were there.

73.     When Plaintiff or one of the Gang's other victims was providing commercial sex acts, Tom Roe or one of his associates would wait in the room's bathroom, in the hallway just outside the room's door, or in an adjacent room in the rented block if it weren't being used for commercial sex at that time, where they would collect payment from by cash or credit card from the johns.

74.     The housekeeping staff routinely cleaned the rooms and replaced the linens following each of the commercial sex encounters.

75.     Many hotel employees at the Jersey City Hyatt, including a manager, valets, and members of the housekeeping staff, paid Tom Roe to participate in commercial sex with the trafficking victims at the hotel.

76.    Around Christmas 2008, Tom Roe sold the services of his victim to a group having a sex party at the Jersey City Hyatt Defendants' hotel. Plaintiff witnessed Tom Roe pay the hotel manager "a large wad of cash" during the party, which Plaintiff understood to be made in exchange for the manager's agreement to allow Roe to have the party at the hotel.

77.    There was no way for the hotel personnel not to have noticed that Plaintiff was likely a trafficking victim. On top of being a minor for most of the period, Plaintiff exhibited other obvious signs of being trafficked because:

a.   Multiple rooms were booked as a block and paid for by Tom Roe or one of the other Gang members;

b.   Tom Roe or his accomplices and associates would stand guard outside the rooms and restrict the victims' freedom of movement;

c.   Tom Roe would often collect cash or credit card payments just outside the front door of the hotel rooms;

d.   Plaintiff was rarely left without Tom Roe or his accomplices escorting him, and he was never allowed to speak to other persons or with hotel staff;

e.   Unregistered male visitors entered Plaintiff's room (and the other rooms) one by one throughout the day, passing by the front desk;

f.   Plaintiff travelled with a group of other trafficking victims who, like him, were emaciated, showed signs of heavy drug usage, and exhibited bruises and other signs of physical violence;

g.   Plaintiff routinely checked into the hotel without luggage or personal belongings;

h.   The housecleaning staff cleaned and sanitized each room immediately after the departure of a sex trafficking customer; and

i.  While Tom Roe or his associates frequently precluded hotel staff from entering the rooms while the sex trafficking was occurring, the hotel staff must have noticed clear signs of commercial sex trafficking throughout the rooms, such as multiple used condoms and wrappers discarded in the trash, bodily fluids on the bedding and towels, and commercial sex and drug paraphernalia, when they eventually entered the rooms after checkout.

78.    The Jersey City Hyatt Defendants benefitted from the sex trafficking venture by developing and maintaining business models that attract and foster the commercial sex market for traffickers and buyers alike; enjoying the steady stream of income that sex traffickers bring to their hotels; financially benefitting from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex; and by receiving payment for rooms.

79.    The Jersey City Hyatt was franchised by Defendant, Hyatt Hotel Corporation, or its affiliates (hereinafter "Hyatt Franchisors"), during the Plaintiff was trafficked at the location.

80.    As part of the franchisor/franchisee contractual relationship, the Hyatt Franchisors since in or around 2007 to 2009 did and still do exercise substantial control over Defendant, Harborside Hotel LLC, as their franchisee and is and was  responsible for and have the contractual right to, among other things:

a.  Create and define the safety standards that franchisees (i.e., Harborside Hotel LLC) are supposed to maintain;

b.  Clearly communicate those standards to franchisees (i.e., Harborside Hotel LLC);

c.  Create the materials for training franchisees (i.e., Harborside Hotel LLC) and their employees;

d.  Provide some or all of the training to franchisees (i.e., Harborside Hotel LLC) or their employees;

e.  Enforce the standards that franchisees (i.e., Harborside Hotel LLC) are supposed to maintain;

f.  Hold the franchisees (i.e., Harborside Hotel LLC) to the standards that franchisees are supposed to maintain; and

g.  Terminate and replace non-compliance franchisees (i.e., Harborside Hotel LLC).

81.    Because of this relationship, the Hyatt Franchisors have the right to control and in fact do control whether Harborside Hotel LLC or their other franchisees take reasonable actions to prevent sex trafficking.

82.    The Hyatt Franchisors received a financial benefit from the renting of rooms and use of facilities at their sponsored franchisee (i.e., Harborside Hotel LLC) locations because of royalties, rents, and other monies subject to the Hyatt Franchisors' contractual relationship with Harborside Hotel LLC or other franchisees.

83.    The Hyatt Franchisors provide materials to train their franchisees, including Harborside Hotel LLC, about the warning signs for sex trafficking within the hotels and, upon information and belief, have some control, either expressly or implied, over the hiring, control, and regulation of employees of Harborside Hotel LLC, and other franchisees.

84.    The Hyatt Franchisors, upon information and belief, had a tacit agreement with Tom Roe or his associates to allow their venture with Tom Roe and his associates and to continue participating in the venture to continue profiting from the exploitation of Plaintiff and other women by Tom Roe at the Hyatt Franchisors' franchisee locations, including Harborside Hotel LLC.

85.     The failure of the Hyatt Franchisors to identify probable sex trafficking is due solely to their turning a blind eye to it, intentionally not taking measures to outline and train franchisees, including Harborside Hotel LLC, on how to spot sex trafficking, and then knowingly taking no action to ensure that those measures are deployed.

86.     Upon information and belief, the Hyatt Franchisors did not so much as (a) read police reports or online reviews about their hotels' conditions which would have highlighted the fact that the hotels were home to rampant prostitution (or if the Hyatt Franchisors did, they ignored them entirely, which is even worse); (b) ask franchisees, including Harborside Hotel LLC, and their employees questions as part of their reviews to identify whether they had seen any signs of prostitution or sex trafficking; or (c) survey the hotels' guest population and activities for the same purpose.

87.     These are reasonable steps that likely would have shut down the respective hotels as havens for the sex trade and, therefore, a high likelihood of sex trafficking, but the Hyatt Franchisors did nothing for eons.

88.     The Hyatt Franchisors are part of the "ventures" involving several hotels—owning and operating some during the relevant period that Plaintiff was trafficked at the Harborside Hotel LLC location, but also providing the training and supervision to their franchisees, including Harborside Hotel LLC, thereby providing actual and constructive knowledge for the activities, including Tom Roe's sex trafficking of Plaintiff at Harborside Hotel LLC, or the other franchisee locations.

89.     The Hyatt Franchisors participated in a venture with Tom Roe by permitting Tom Roe to continue his sex trafficking ring by forcing, coercing, and exploiting the other victims, including Plaintiff, through his constant physical abuse in the presence of hotel employees at the

franchisee locations, including Harborside Hotel LLC, while continually profiting from Tom Roe's sex trafficking activity from the ongoing venture.

90.    The Hyatt Franchisors are or were based in Illinois.  The Illinois Governor has issued a press release about combating human trafficking and supporting survivors of human trafficking, which included warning signs of those being trafficked.[2]  Additionally, the Illinois Department of Human Services requires mandatory posting of services for victims of human trafficking and available resources in particular businesses and establishments, including hotels and motels.[3]

91.    The Hyatt Franchisors are or were based in New Jersey. The New Jersey Attorney General's office has released important information for hotel and motel owners and managers to train their staff to recognize human trafficking.[4] The New Jersey Attorney General's Office has published a list of "Red Flags" that should alert hospitality professionals that a person they come on contact with may be a victim of human trafficking.[5] The warning signs include:

- o An individual checks in with multiple young guests, does not have luggage, and leaves the hotel.

- o An individual might have numerous rooms reserved for one night. Rooms may be paid for with cash.

- o Within the group of guests checking in there may be one person who appears very controlling over the rest of the group and will not let the others in the group speak.

- o The guest(s) staying in the hotel may not have any luggage or personal items.

---

[2] https://www.illinois.gov/news/press-release.29493.html.

[3] https://www.dhs.state.il.us/page.aspx?item=82023.

[4] https://www.nj.gov/oag/dcj/humantrafficking/downloads/NJ-Human-Trafficking-Brochure.pdf.

[5] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.nj.gov/oag/dcj/humantrafficking/downloads/NJHTTF_FS_Hospitality.pdf.

o   The guest(s) might exhibit signs of physical abuse such as: bruises, burns, scars, and/or malnourishment.[6]

92.     The United States Department of Homeland Security likewise has long published the following ways of identifying sex trafficking:

❖ Does the person appear disconnected from family, friends, community organizations, or houses of worship?

❖ Has a child stopped attending school?

❖ Has the person had a sudden or dramatic change in behavior?

❖ Is a juvenile engaged in commercial sex acts?

❖ Is the person disoriented or confused, or showing signs of mental or physical abuse?

❖ Does the person have bruises in various stages of healing?

❖ Is the person fearful, timid, or submissive?

❖ Does the person show signs of having been denied food, water, sleep, or medical care?

❖ Is the person often in the company of someone to whom he or she defers? Or someone who seems to be in control of the situation, e.g., where they go or who they talk to?

❖ Does the person appear to be coached on what to say?

❖ Is the person living in unsuitable conditions?

❖ Does the person lack personal possessions and appear not to have a stable living situation?

---

[6] *Id.*

❖ Does the person have freedom of movement? Can the person freely leave where they live? Are there unreasonable security measures?

93.     These commonsense inquiries should have been obvious to the Hotel Owner Defendants, including Harborside Hotel LLC, and also to the Hyatt Franchisors at all times.

94.     The Hyatt Franchisors cannot say that they have been unaware that their hotels, which tend to be lower cost and frequently located in low-income areas, are havens for the sex industry.

95.     The industry group, the American Hotel & Lodging Associate (www.ahla.com), implemented a national anti-trafficking campaign called "No Room for Trafficking." [7]  This was highlighted by the Hyatt Franchisors several years ago whereby they adopted more robust standards.[8]

96.     The Hyatt Franchisors have acknowledged their failures to combat sex trafficking and have attempted to demonstrate what the Hyatt Franchisors will start doing to combat it more effectively.

97.     The Hyatt Franchisors have each published their compliance standards and efforts to combat sex trafficking through their hotels.[9]

98.     However, it still does not appear that much of what the Hyatt Franchisors said they would do was done at all as trafficking of Plaintiff continued at their franchised hotels, including Harborside Hotel LLC's location, through 2009 as the Hyatt Franchisors permitted the venture to continue so they could continue benefiting financially from Tom Roe's actions.

---

[7] NRFT- Member Resource Guide.pdf.

[8] Hyatt: https://newsroom.hyatt.com/121015On-Human-Rights-Day-Hyatt-Reinforces-Commitment-To-Protect-Children-And-Help-Them-Live-Free-From-Exploitation.

[9] Hyatt: https://newsroom.hyatt.com/121015On-Human-Rights-Day-Hyatt-Reinforces-Commitment-To-Protect-Children-And-Help-Them-Live-Free-From-Exploitation.

99.     The Hyatt Franchisors' lack of action permitted Tom Roe to continually force, abuse, and exploit men and women, including Plaintiff, to allow the venture to continue so that the Hyatt Franchisors could continue to profit.

100.    The Hyatt Franchisors' lack of action to stop Tom Roe or his associates and their acquiesced participation in the venture, despite the Hyatt Franchisors' publicized stance and knowledge of sex trafficking at their franchised locations, including Harborside Hotel LLC, have allowed Plaintiff and other trafficked victims to be  emotionally, mentally, and physically injured during their ordeal at the Hyatt Franchisors' franchised premises.

101.    The Hyatt Franchisors have thus known about these red flags of sex trafficking and guidelines for over a decade and have only recently acknowledged that they have the responsibility, opportunity, means, and capability of doing something about it.

102.    As such, it was incumbent on the Hyatt Franchisors to take reasonable measures not to provide material support, lodging, or other aid or comfort to Tom Roe, his associates, and their sex trafficking venture—instead of playing an integral role in its execution over the years— and take reasonable steps to prevent their franchisees, including Harborside Hotel LLC, from facilitating a sex trade business with a high likelihood of sex trafficking victimization.

103.    By all appearances, the hotels at issue, including Harborside Hotel LLC, in this case would not survive financially without the sex trafficking business writ large. The Hyatt Franchisors had actual and constructive knowledge, based on the various red flag warnings issued by local Attorneys General as well as by the Department of Homeland Security, that sex trafficking regularly occurs at hotels owned, operated, and controlled by the Hyatt Franchisors.

104.    Upon information and belief, the Hyatt Franchisors sent inspectors annually to grade each hotel, including Harborside Hotel LLC. Those in-person inspections would have alerted

the Hyatt Franchisors to the signs of sex trafficking identified above at all relevant times. Those inspectors should have known—and should have been trained to recognize—that the hotels, including Harborside Hotel LLC, were aiding and abetting sex trade businesses, which would have raised the likelihood of sex trafficking. These inspectors who acted as agents of the Hyatt Franchisors provided constructive knowledge for the ongoing activities of the sex trafficking occurring at the franchisee locations, including Harborside Hotel LLC, but since nothing changed in the sex trafficking and exploitation of Plaintiff, the Hyatt Franchisors acquiesced to their continued participation in a venture with Tom Roe and his associates.

105.    The Hyatt Franchisors also should have been aware of the public postings and reviews that described the rampant sex trade at the Hyatt Franchisors' hotels, including Harborside Hotel LLC's location, to which their names are associated.

106.    Furthermore, the hotel ventures and each of the Hyatt Franchisors used interstate interactive computer services to book rooms, communicate with franchisees, including Harborside Hotel LLC, about bookings, clear financial transactions for the rooms, communicate online advertisements and reviews about the hotel, take and collect payments and fees, communicate standards and reviews, and perform assessments about the hotel and the hotel's compliance with the Hyatt Franchisors' franchisees, including Harborside Hotel LLC, among other similar things.

107.    In response to the recent uptick in awareness of human trafficking and the enforcement of laws against it, Hyatt and other hotel franchisors have recently published compliance standards and efforts to combat trafficking.[10]

---

[10] Hyatt: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.hyatt.com/content/dam/hotel/propertysites/assets/global/corporate-responsibility/SlaveryHumanTraffickingStmnt_2023.pdf.

108. But these efforts were too little and too late to protect Plaintiff from the depravations of sexual enslavement, which these Hyatt Franchisors all profited from.

### C. W Hoboken by Marriot (West Hoboken)

109. During the same time period that Plaintiff was trafficked out of the Jersey City Hyatt, he was also trafficked out of the W Hoboken by Marriot ("W Hoboken").

110. Upon information and belief, during the time Plaintiff was trafficked, the W Hoboken was owned or controlled by Defendant, Marriott International, Inc., f/k/a Starwood Hotels & Resorts, during the time Plaintiff was trafficked.

111. Defendant, Marriott International, Inc., f/k/a Starwood Hotels & Resorts,, and the unnamed and unidentified employees thereof ("W Hoboken Defendants") formed a business venture that participated in Tom Roe's sex trafficking scheme. The hotel employees involved in this venture include, but are not limited to, the front desk workers, the security staff, housekeeping and janitorial staff, maintenance workers, owners, accounting persons, and managers. At all relevant times, the above  W Hoboken Defendants were the agents of each other, if not the employees of each other, and were acting in the scope of their agency or employment.

112. The W Hoboken was owned and operated by Defendant, Marriott International, Inc., f/k/a Starwood Hotels & Resorts, , during the relevant timeframe.

113. At all relevant times, the W Hoboken Defendants had a continuous repeat business relationship with Tom Roe wherein Tom Roe would deliver victims to the hotel to provide its guests with commercial sex.

114. Plaintiff was a minor during the majority of the time he was trafficked out of the W Hoboken.

115.    At this hotel, the Gang members would routinely escort victims to rooms where hotel guests were waiting for services. The gang member would then wait in the hallway or in the hotel room bathroom while the victim provided commercial sex to the hotel guest.

116.    In one instance, the Gang brought Plaintiff and other victims to work at a large sex party in one of the hotel's larger suites. A security guard from the hotel knocked on the door of the suite in response to a noise complaint. Tom Roe invited the hotel security guard into the room to participate in the sex party, which he did. The guard had sex with Plaintiff and other victims during the party.

117.    There was no way for the hotel personnel not to have noticed that Plaintiff was likely a trafficking victim. On top of being a minor for much of the period, Plaintiff exhibited other obvious signs of being trafficked because:

   a.   Tom Roe or his accomplices and associates would stand guard outside the rooms and restrict the victims' freedom of movement;

   b.   Plaintiff was rarely left without Tom Roe or his accomplices escorting him, and he was never allowed to speak to other people or with hotel staff;

   c.   Plaintiff was emaciated, showed signs of heavy drug usage or inebriation, and exhibited bruises and other signs of physical violence when he was escorted in and out of the hotel by gang members; and

   d.   Plaintiff routinely checked into the hotel without luggage or personal belongings.

118.    The W Hoboken benefitted from the sex trafficking venture by developing and maintaining business models that attract and foster the commercial sex market for traffickers and buyers alike; enjoying the steady stream of income that sex traffickers bring to their hotels;

financially benefitting from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex; and by receiving payment for rooms.

### D. Super 8 Bridgeton Missouri

119.    From June 2014 through November 2014, Tom Roe trafficked Plaintiff and two of his other male victims out of the Super 8 Bridgeton Missouri ("Super 8 Bridgeton").

120.    Upon information and belief, during the time Plaintiff was trafficked, Super 8 Bridgeton was owned or controlled by Defendant, Sam & Ram Corp., and controlled, maintained, and managed by Defendants, Wyndham Hotels & Resorts, Inc. and Super 8 Worldwide, Inc. during the time Plaintiff was trafficked.

121.    Defendants, Sam & Ram Corp., Super 8 Worldwide, Inc. and Wyndham Hotels & Resorts, Inc.,  along with Super 8 Bridgeton, and the unnamed and unidentified employees thereof ("Super 8 Bridgeton Venture") formed a joint business venture that participated in Tom Roe's sex trafficking scheme. The hotel employees involved in this venture include, but are not limited to, the front desk workers, housekeeping and janitorial staff, maintenance workers, owners, accounting persons, and managers. At all relevant times, the above Super 8 Bridgeton Venture were the agents of each other, if not the employees of each other, and were acting in the scope of their agency or employment.

122.    Super 8 Bridgeton was a franchisee of Defendants, Wyndham Hotel & Resorts, Inc. and Super 8 Worldwide, Inc., during this period.

123.    At all relevant times, Super 8 Bridgeton Venture had a continuous repeat business relationship with Tom Roe wherein they rented multiple rooms to Tom Roe at a time to knowingly facilitate—at a minimum—a sex trafficking scheme that they knew or should have known involved victims who were coerced into participating and thus were the victims of sex trafficking.

124.    Tom Roe, Plaintiffs, and the other two victims resided at this hotel continuously while they were there.

125.    Tom Roe paid the hotel operators, an Indian married couple, in cash to permit the sex trafficking at their motel to continue.

126.    While the operators of the motel permitted the trafficking to occur, the wife would belittle and complain about Plaintiff and the other trafficking victims if they were seen outside of their rooms.

127.    There was no way for the hotel personnel not to have noticed that Plaintiff was likely a trafficking victim.  Plaintiff exhibited other obvious signs of being trafficked because:

    a.    Multiple rooms were continuously booked and paid for by Tom Roe for a period of almost six months;

    b.    Tom Roe stood guard outside the rooms and the hotel, was armed, and restricted the victims' freedom of movement;

    c.    Tom Roe would often collect cash just outside the front door of the hotel rooms;

    d.    Plaintiff was rarely left without Tom Roe or his accomplices escorting him, and he was never allowed to speak to other people or with hotel staff;

    e.    Unregistered male visitors entered Plaintiff's room (and the other rooms) one by one throughout the day, passing by the front desk;

    f.    Plaintiff travelled with a group of other victims who, like him, were emaciated, showed signs of heavy drug usage and inebriation, and exhibited bruises and other signs of physical violence; and

    g.    While Tom Roe or his associates frequently precluded hotel staff from entering the rooms while the sex trafficking was occurring, the hotel staff must have noticed

clear signs of commercial sex trafficking throughout the rooms, such as multiple used condoms and wrappers discarded in the trash, bodily fluids on the bedding and towels, and commercial sex and drug paraphernalia, when they eventually entered the rooms after checkout.

128. The Super 8 Bridgeton benefitted from the sex trafficking venture by developing and maintaining business models that attract and foster the commercial sex market for traffickers and buyers alike; enjoying the steady stream of income that sex traffickers bring to their hotels; financially benefitting from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex; and by receiving payment for rooms.

129. The Super 8 Bridgeton was franchised by Defendants, Wyndham Hotels & Resorts, Inc., and Super 8 Worldwide, Inc., or their affiliates (hereinafter "Wyndham Franchisors), during the time Plaintiff was trafficked at the location.

130. As part of the franchisor/franchisee contractual relationship, the Wyndham Franchisors since in or around 2014 did and still do exercise substantial control over Defendant, Sam & Ram Corp., as their franchisee and is and are responsible for and have the contractual right to, among other things:

 a. Create and define the safety standards that franchisees (i.e., Sam & Ram Corp.) are supposed to maintain;

 b. Clearly communicate those standards to franchisees (i.e., Sam & Ram Corp.);

 c. Create the materials for training franchisees (i.e., Sam & Ram Corp.) and their employees;

 d. Provide some or all of the training to franchisees (i.e., Sam & Ram Corp.) or their employees;

e. Enforce the standards that franchisees (i.e., Sam & Ram Corp.) are supposed to maintain;

f. Hold the franchisees (i.e., Sam & Ram Corp.) to the standards that franchisees are supposed to maintain; and

g. Terminate and replace non-compliance franchisees (i.e., Sam & Ram Corp.).

131. Because of this relationship, the Wyndham Franchisors have the right to control and in fact do control whether Sam & Ram Corp. or their other franchisees take reasonable actions to prevent sex trafficking.

132. The Wyndham Franchisors received a financial benefit from the renting of rooms and use of facilities at their sponsored franchisee (i.e., Sam & Ram Corp.) locations because of royalties, rents, and other monies subject to the Wyndham Franchisors' contractual relationship with Sam & Ram Corp. or other franchisees.

133. The Wyndham Franchisors provide materials to train their franchisees, including Sam & Ram Corp., about the warning signs for sex trafficking within the hotels and, upon information and belief, have some control, either expressly or implied, over the hiring, control, and regulation of employees of Sam & Ram Corp., and other franchisees.

134. The Wyndham Franchisors, upon information and belief, had a tacit agreement with Tom Roe or his associates to allow their venture with Tom Roe and his associates and to continue participating in the venture to continue profiting from the exploitation of the Plaintiff and other women by Tom Roe at the Wyndham Franchisors' franchisee locations, including Sam & Ram Corp.

135. The failure of the Wyndham Franchisors to identify probable sex trafficking is due solely to their turning a blind eye to it, intentionally not taking measures to outline and train

franchisees, including Sam & Ram Corp., on how to spot sex trafficking, and then knowingly taking no action to ensure that those measures are deployed.

136.    Upon information and belief, the Wyndham Franchisors did not so much as (a) read police reports or online reviews about their hotels' conditions which would have highlighted the fact that the hotels were home to rampant prostitution (or if the Wyndham Franchisors did, they ignored them entirely, which is even worse); (b) ask franchisees, including Sam & Ram Corp., and their employees questions as part of their reviews to identify whether they had seen any signs of prostitution or sex trafficking; or (c) survey the hotels' guest population and activities for the same purpose.

137.    These are reasonable steps that likely would have shut down the respective hotels as havens for the sex trade and, therefore, a high likelihood of sex trafficking, but the Wyndham Franchisors did nothing for eons.

138.    The Wyndham Franchisors are part of the "ventures" involving several hotels—owning and operating some during the relevant period that Plaintiff was trafficked at the Sam & Ram Corp. location, but also providing the training and supervision to their franchisees, including Sam & Ram Corp., thereby providing actual and constructive knowledge for the activities including Tom Roe's sex trafficking of Plaintiff at Sam & Ram Corp., or the other franchisee locations.

139.    The Wyndham Franchisors participated in a venture with Tom Roe by permitting Tom Roe to continue his sex trafficking ring by forcing, coercing, and exploiting the other victims, including Plaintiff, through his constant physical abuse in the presence of hotel employees at the franchisee locations, including Sam & Ram Corp., while continually profiting from Tom Roe's sex trafficking activity from the ongoing venture.

140.    The Wyndham Franchisors are or were based in New Jersey. The New Jersey Attorney General's office has released important information for hotel and motel owners and managers to train their staff to recognize human trafficking.[11] The New Jersey Attorney General's Office has published a list of "Red Flags" that should alert hospitality professionals that a person they come on contact with may be a victim of human trafficking.[12] The warning signs include:

- o  An individual checks in with multiple young guests, does not have luggage, and leaves the hotel.

- o  An individual might have numerous rooms reserved for one night. Rooms may be paid for with cash.

- o  Within the group of guests checking in there may be one person who appears very controlling over the rest of the group and will not let the others in the group speak.

- o  The guest(s) staying in the hotel may not have any luggage or personal items.

- o  The guest(s) might exhibit signs of physical abuse such as: bruises, burns, scars, and/or malnourishment.[13]

141.    The United States Department of Homeland Security likewise has long published the following ways of identifying sex trafficking:

- ❖  Does the person appear disconnected from family, friends, community organizations, or houses of worship?

- ❖  Has a child stopped attending school?

- ❖  Has the person had a sudden or dramatic change in behavior?

- ❖  Is a juvenile engaged in commercial sex acts?

---

[11] https://www.nj.gov/oag/dcj/humantrafficking/downloads/NJ-Human-Trafficking-Brochure.pdf.

[12] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.nj.gov/oag/dcj/humantrafficking/downloads/NJHTTF_FS_Hospitality.pdf.

[13] *Id.*

❖ Is the person disoriented or confused, or showing signs of mental or physical abuse?

❖ Does the person have bruises in various stages of healing?

❖ Is the person fearful, timid, or submissive?

❖ Does the person show signs of having been denied food, water, sleep, or medical care?

❖ Is the person often in the company of someone to whom he or she defers? Or someone who seems to be in control of the situation, e.g., where they go or who they talk to?

❖ Does the person appear to be coached on what to say?

❖ Is the person living in unsuitable conditions?

❖ Does the person lack personal possessions and appear not to have a stable living situation?

❖ Does the person have freedom of movement? Can the person freely leave where they live? Are there unreasonable security measures?

142. These commonsense inquiries should have been obvious to the Hotel Owner Defendants, including Sam & Ram Corp., and also to the Wyndham Franchisors at all times.

143. The Wyndham Franchisors cannot say that they have been unaware that their hotels, which tend to be lower cost and frequently located in low-income areas, are havens for the sex industry.[14]

---

[14] See, e.g., https://www.tripadvisor.com/ShowUserReviews-g55857-d109100-r512045243-La_Quinta_Inn_Suites_by_Wyndham_Fort_Worth_City_View-Fort_Worth_Texas.html.

144. The industry group, the American Hotel & Lodging Associate (www.ahla.com), implemented a national anti-trafficking campaign called "No Room for Trafficking." [15] This was highlighted by the Wyndham Franchisors several years ago whereby they adopted more robust standards.[16]

145. The Wyndham Franchisors have acknowledged their failures to combat sex trafficking and have attempted to demonstrate what the Wyndham Franchisors will start doing to combat it more effectively.

146. The Wyndham Franchisors have each published their compliance standards and efforts to combat sex trafficking through their hotels.[17]

147. However, it still does not appear that much of what the Wyndham Franchisors said they would do was done at all as trafficking of Plaintiff continued at all their franchised hotels, including Sam & Ram Corp.'s location, through 2014 as the Wyndham Franchisors permitted the venture to continue so they could continue benefiting financially from Tom Roe's actions.

148. The Wyndham Franchisors' lack of action permitted Tom Roe to continually force, abuse, and exploit men and women, including Plaintiff, to allow the venture to continue so that the Wyndham Franchisors could continue to profit.

149. The Wyndham Franchisors' lack of action to stop Tom Roe or his associates and their acquiesced participation in the venture, despite the Wyndham Franchisors' publicized stance and knowledge of sex trafficking at their franchised locations, including Sam & Ram Corp., have

---

[15] NRFT- Member Resource Guide.pdf.

[16] Wyndham: https://investor.wyndhamhotels.com/news-events/press-releases/detail/126/wyndham-hotels-resorts-reinforces-efforts-to-combat-human.

[17] Wyndham: https://investor.wyndhamhotels.com/news-events/press-releases/detail/126/wyndham-hotels-resorts-reinforces-efforts-to-combat-human.

allowed Plaintiff and other trafficked victims to be emotionally, mentally, and physically injured during their ordeal at the Wyndham Franchisors' franchised premises.

150. The Wyndham Franchisors have thus known about these red flags of sex trafficking and guidelines for over a decade and have only recently acknowledged that they have the responsibility, opportunity, means, and capability of doing something about it.

151. As such, it was incumbent on the Wyndham Franchisors to take reasonable measures not to provide material support, lodging, or other aid or comfort to Tom Roe, his associates, and their sex trafficking venture—instead of playing an integral role in its execution over the years—and take reasonable steps to prevent their franchisees, including Sam & Ram Corp., from facilitating a sex trade business with a high likelihood of sex trafficking victimization.

152. By all appearances, the hotels at issue, including Sam & Ram Corp., in this case would not survive financially without the sex trafficking business writ large. The Wyndham Franchisors had actual and constructive knowledge, based on the various red flag warnings issued by local Attorneys General, as well as by the Department of Homeland Security, that sex trafficking regularly occurs at hotels owned, operated, and controlled by the Wyndham Franchisors.

153. Upon information and belief, the Wyndham Franchisors sent inspectors annually to grade each hotel, including Sam & Ram Corp. Those in-person inspections would have alerted the Wyndham Franchisors to the signs of sex trafficking identified above at all relevant times. Those inspectors should have known—and should have been trained to recognize—that the hotels, including Sam & Ram Corp., were aiding and abetting sex trade businesses, which would have raised the likelihood of sex trafficking. These inspectors who acted as agents of the Wyndham Franchisors provided constructive knowledge for the ongoing activities of the sex trafficking occurring at the franchisee locations, including Sam & Ram Corp., but since nothing changed in

the sex trafficking and exploitation of Plaintiff, the Wyndham Franchisors acquiesced to their continued participation in a venture with Tom Roe and his associates.

154. The Wyndham Franchisors also should have been aware of the public postings and reviews that described the rampant sex trade at the Wyndham Franchisors' hotels, including Sam & Ram Corp.'s location, to which their names are associated.

155. Furthermore, the hotel ventures and each of the Wyndham Franchisors used interstate interactive computer services to book rooms, communicate with franchisees, including Sam & Ram Corp., about bookings, clear financial transactions for the rooms, communicate online advertisements and reviews about the hotel, take and collect payments and fees, communicate standards and reviews, and perform assessments about the hotel and the hotel's compliance with the Wyndham Franchisors' franchisees, including Sam & Ram Corp., among other similar things.

156. In response to the recent uptick in awareness of human trafficking and the enforcement of laws against it, Wyndham and other hotel franchisors have recently published compliance standards and efforts to combat trafficking.[18]

157. But these efforts were too little and too late to protect Plaintiff from the depravations of sexual enslavement, which these Franchisors all profited from.

## V.

## VICARIOUS LIBILITY FACTS

158. Defendants are further liable for the acts and omissions of their franchisees or contractual agents due to the Owners/Franchisor Defendants' negligent failure to (i) identify the proper operators to serve as franchisees or contractual agents; (ii) train or supervisor their

---

[18] Wyndham: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wyndhamdestinations.com/content/dam/wyndham/wynd-investor-site/pdf/WYN-modern-slavery-statement.pdf.

franchisees or contractual agents; (iii) create and implement anti-trafficking measures; and (iv) train and monitor their franchisees' or contractual agents' compliance with said measures.

159. If any Defendant is found not to be directly liable to Plaintiff, they are liable under all counts of this Complaint under one or more of the foregoing referenced doctrines.

160. Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of aiding and abetting or a similar applicable state or federal doctrine, law, statute, or regulation.

   a. Each Defendant gave substantial assistance, comfort or encouragement to Tom Roe or his associates to perpetrate their sex trafficking scheme and violence against Plaintiff;

   b. Each Defendant, directly or through one or more of its employees or agents, actively took part in Plaintiff's trafficking, or furthered it by cooperating with Tom Roe or his associates, or ratified and adopted their actions so that the joint ventures could make money, avoid detection, and continue as a business; and

   c. Each Defendant's conduct was a substantial factor in causing harm to Plaintiff and perpetuating his trafficking because ,without the hotels, motels, or clubs, permitting the sex trafficking or forced prostitution would not have occurred.

161. Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of *respondeat superior* or a similar applicable state or federal doctrine, law, statute, or regulation:

   a. Each of the named Defendants herein acting through their agents or employees are liable for the acts and omissions of their agents or employees giving rise to liability;

b.  For each of the respective Defendant hotel, motel, or club ventures described, the owners, management companies, affiliates, employees, or agents, and, as applicable, franchisors were the agents of each other, if not the employees of each Defendant, and at all times were acting in the scope of the agency or employment;

c.  For the hotel, motel, or club employees, their tortious conduct is chargeable to the hotel, motel, or club owners, management companies, or affiliates because their acts or omissions were in the scope of their employment or in the scope of agency in a way that was inherent in their employment duties and was conduct that was a natural outgrowth of their employment or agency duties under the risk-of-the-enterprise doctrine; and

d.  Each Defendant or the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International Inc., are vicariously liable for the acts or omissions of their own employees, agents, or affiliates.

162.  Each Defendant found not to be directly liable to Plaintiff is liable under the doctrine of a joint enterprise or a similar applicable state or federal doctrine, law, statute, or regulation:

a.  Each Defendant or the Franchisors Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International Inc., are vicariously liable for the acts or omissions of their franchisees or contractual agents and vice versa under the theory of joint enterprise liability;

b.  Each Defendant or Franchisor Defendants (in their capacity as such) formed a joint venture with their respective hotel, motel, or club ventures because (i) each

intended to combine their relative property, skills, knowledge, and operations of the hotel, motel, or club for the purposes of carrying out a single business (the franchised hotel business at issue); (ii) each of the Defendants or Franchisor Defendants and each of their respective franchisees or contractual agents had a relevant ownership or management interest in the franchised hotel, motel, or club business; (iii) each of the Defendants or Franchisor Defendants and their franchisee or contractual agents had a right to control the business—per their appliable agreements—the hotel, motel, or club owners/franchisees controlled the day-to-day operations while the franchisor/owner controlled the macro aspects of the business; and (iv) upon information and belief, they shared the profits and each shared losses in that they bore, at a minimum, some or all of their respective unrecouped costs if the business never made a profit; and

c. Each joint enterprise is alleged to have been made actually and by apparent authority to Plaintiff.

163.    Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of concerted action or a similar applicable state or federal doctrine, law, statute, or regulation:

a. Each Defendant or the Franchisors Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International Inc., are vicariously liable for the acts or omissions of their franchisees or contractual agents and those franchisees' or contractual agents' employees and agents, and vice versa under the theory of concerted action;

b.  Each Defendant or Franchisor Defendant within each joint venture worked towards a common goal of building and maintaining the hotel business at each respective hotel, motel, or club;

c.  Each Defendant knew or should have known that they were engaging in and materially assisting a sex trade operation in their hotels, motels, or clubs, which they knew or should have known could violate a duty of care owed to Plaintiff;

d.  Each of the Defendants or Franchisor Defendants (in their capacity as such) intended to combine their relative property, skills, knowledge, and operations of the hotel, motel, or club for the purposes of carrying out a single business (the franchised businesses at issue);

e.  Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a relevant ownership interest in the franchised hotel, motel, or club business;

f.  Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a right to control the business (per all appliable contractual agreements) the hotel, motel, or club owners/franchisees controlled the day-to-day operations while the Defendants or Franchisor Defendants controlled the macro aspects of the business, and had the right to take control of the franchised hotel, motel, or club business;

g.  Upon information and belief, each Defendant shared the profits and each shared losses in that they bore, at a minimum, some or all of their respective unrecouped costs if the business never made a profit.

164.    As to each Defendant who contends they did not personally commit any of the acts that would give rise to liability, it is pleaded that said Defendant is liable through one or more of the doctrines or legal theories mentioned above.

165.    Under those doctrines or legal theories, each Defendant is liable for Plaintiff's harm, whether physical, psychological, or otherwise.

166.    Each Defendant's acts or omissions under one or more of the above doctrines or legal theories were a substantial factor in causing harm to Plaintiff and perpetuating Plaintiff's sex trafficking or exploitation.

167.    Plaintiff's claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

**VI.**

**CAUSES OF ACTION**

168.    All conditions precedent have been satisfied.

**COUNT ONE: VIOLATION OF FEDERAL ANTI-TRAFFICKING STATUTE**
**(18 U.S.C. § 1581 *ET SEQ.*)**
**(Against All Defendants)**

169.    Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "168", including the Preliminary Statement, as if stated herein with specificity and particularity.

170.    Defendants have each (and among them jointly and severally) violated the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1581 *et seq.* ("TVPRA") and, therefore, are liable to Plaintiff for compensatory damages, punitive damages, attorneys' fees, and costs.

171.    The Victims of Trafficking and Violence Protection Act of 2000, Public Law 106-386, as amended, declares as illegal the trafficking in persons, including forced labor, involuntary servitude, slavery, and sex trafficking.

172.    In addition to being a victim of a "severe form[] of trafficking as it is defined under 22 U.S.C.S. §7102(11), Plaintiff was also "caused to engage in commercial sex act[s]" before she attained the age of 18 and for years thereafter. *See* 18 U.S.C. §1591(a).

173.    18 U.S.C. § 1591(a) makes it a crime to knowingly benefit, either financially or by receiving anything of value from participating in a venture that engages the trafficking of children, or the trafficking of adults by force, threat or coercion.  18 U.S.C. §1591(a).

174.    18 U.S.C. §1593A specifically makes it a violation of federal law to benefit financially or receive anything of value, from participating in a venture which has engaged in any act in violation of this chapter, with knowing or in reckless disregard of the fact that the venture has engaged in such violation.

175.    18 U.S.C. §1594 makes it a violation of federal law to attempt to or conspire with another to violate certain statutes, including 18 U.S.C. §1589, which criminalizes the obtaining of labor (or knowingly benefitting financially from participating in such a scheme when they knew or should have known of the trafficking) to obtain labor by a person by means of force, threats of force or physical restraint, serious harm or threats of serious harm, or the abuse of law or the legal processes.

176.    18 U.S.C. §1590 makes it a violation of federal law for one to "harbor" any person for labor or services in violation of this chapter.

177.    22 U.S.C. §7102(12) defines "sex trafficking" as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

178.    To "participat[e] in a venture" for purposes of the violation means "knowingly assisting, supporting, or facilitating" sex trafficking where "knowingly" means with awareness or being recklessly unaware.   18 U.S.C. §1591(e)(4).   A violation of this section includes "[w[however knowingly…benefits, financially or by receiving anything of value from participation in a venture which has engaged in an act in violation of paragraph [(a)](1)." 18 U.S.C. §1591(a)(2) *compare with* 18 U.S.C. § 1591(e)(4); *see also* 18 U.S.C. §1591(a)(1) ("Whoever knowingly…recruits, entices, harbors, transports, provides obtains, advertises, maintains, patronizes, or solicits by any means a person…"

179.    18 U.S.C. § 1594(g) also declares that any such scheme "shall be considered an organized criminal activity or other serious offense…"

180.    18 U.S.C. § 1595 provides that the Plaintiff may bring a civil action against each Defendant because each knowingly benefited, or attempted or conspired to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter and may recover damages and reasonable attorneys' fees.

181.    18 U.S.C. §2421A(b) make it a violation of federal law for one to use an interactive computer service (or who attempts to do so) "with the intent to promote or facilitate the prostitution of another person" and acts in reckless disregard that such conduct contributed to sex trafficking.

182.    18 U.S.C. §2421A(c) authorizes a civil action separately from §1595 for damages and attorneys' fees for any person injured by reason of a violation of §2421A(b), and subsection (d) requires the imposition of mandatory restitution.

183.    Section 230 of the Communications Decency Act provides no defense to an action under §2421A(b) and (c).

184.    Each of the hotel ventures knowingly benefited financially and knew or should have known that even as an adult, Plaintiff was being trafficked for the purpose of having sex for money. They knew or should have known that he was not doing so of his free will and free from coercion— and their failure to know was the result of their own recklessness.

185.    Each Defendant benefited financially in at least the following ways:

a.    Each Defendant hotel or motel venture made money not only from Plaintiff but from the joint business venture model overall by harboring sex trafficking victims;

b.    Each Defendant hotel venture could rely on a constant stream of income not just from Tom Roe's and his Gang members' trafficking of Plaintiff and others and their room rentals or the use of their facilities to promote sex trafficking but from the halo effect of others being a reliable source of income;

c.    Each Defendant hotel or motel venture benefited financially from realizing the benefit of their hotel, motel, or club asset being more valuable on a financial basis due to the income that was generated;

d.    Each of the Franchisors Defendants (Wyndham Hotels & Resorts, Inc., Super 8 Worldwide, Inc., Hyatt Corporation, and Marriott International Inc.) benefited financially from the royalties that were paid as part of the above-noted financial benefits to the hotels themselves, including the appreciation in the value of the

Franchisor's name and goodwill, and the fact that the brand was being projected to the public through signage and other advertisements.

186. There is no doubt that Tom Roe and his associates would not have been able to carry out their trafficking scheme of Plaintiff without the participation of the Defendants. Thus, each Defendant is liable under 18 U.S.C. §1595 of the TVPRA.

187. Each Defendant hotel or motel venture was using a facility or means of interstate commerce, such as interstate wire communications via the internet and banking system, and so owned, managed, controlled, or operated an interactive computer service for all facets of its business, including performing banking, reservations, video surveillance, and communications with guests and non-guests.

188. Each Defendant hotel ormotel venture promoted or intentionally facilitated prostitution in its hotels, motels, or clubs, by booking rooms or permitting admission to its services and accepting payment for them year in and year out, with full knowledge that such prostitution was occurring and did nothing to stop it or curb it, and if they were actually unaware that their actions contributed to the trafficking of Plaintiff, then they were reckless in their lack of awareness.

189. Each Defendant is therefore liable under 18 U.S.C. §2421A of the TVPRA.

190. Plaintiff is entitled to the damages he has suffered, including, but not limited to, her lost earnings and lost earning capacity due to the more than ten years he lost since he was first sex trafficked as a minor; the fact that he was not able to make any money or have the change to develop a career of his own and have a normal life; the fact that he now has to live with the fear, stigma, shame and mental anguish from being a sex trafficking victim; and the pain, suffering, and physical scars of his plight, his extreme emotional distress and anguish, and his physical injuries, including, but not limited to, the amputation of his leg and countless bruises and other injuries.

191.    Plaintiff is further entitled to attorneys' fees for bringing this claim, as well as punitive damages and restitution.

192.    Plaintiff pleads that this action is timely as to all pleaded occurrences because the claims did not accrue until the last wrongful act, Plaintiff's incapacity and inability to bring a claim until he became free of Tom Roe's or his fellow Gang members' influence and threats which further tolls the statute of limitation, and because Defendants are estopped from raising the statute of limitations as a defense and any statute is equitably tolled because Plaintiff was unaware of his injury.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOT INTERNATIONAL INC. , f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

<u>**COUNT TWO**</u>**: VIOLATION OF NEW JERSEY HUMAN TRAFFICKING STATUTES (**<u>**N.J.S.A.**</u>** §2C:13-8 *et seq.*)**
**(Against All Defendants)**

193.    Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "192", including the Preliminary Statement, as if stated herein with specificity and particularity.

194.    Sex trafficking is prohibited in the State of New Jersey under <u>N.J.S.A.</u> §2C:13-8 *et seq.*

195.    N.J.S.A. §2C:13-8(1) provides that a person commits the crime of human trafficking if they "knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another, to engage in sexual activity as defined by paragraph (2) of N.J.S.A. §2C:34-1[(a)]", which defines prostitution and related offenses.

196.    A person also commits the crime of human trafficking under N.J.S.A. §2C:13-8(2) if a Defendant "receives anything of value from participation as an organizer, supervisor, financier, or manager in a scheme or course of conduct which violates [N.J.S.A. §2C:13-8(1)]" or pursuant to N.J.S.A. §2C:13-8(3) if a Defendant "knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains by any means, a child under 18 years of age, to engage in sexual activity as defined in paragraph of N.J.S.A. §2C:34-1[(a)], whether or not the actor mistakenly believed that the child was 18 years of age or older, even if that mistaken belief was reasonable."

197.    Similar to the Federal TVPRA, New Jersey allows for a civil remedy for those victims of sex trafficking via N.J.S.A. §2C:13-8.1(a), which states that "[a]ny person injured, including injury due to the loss of moneys or property, real or personal, by an actor and all those acting in concert with the actor who committed a human trafficking offense in violation of… [N.J.S.A. §2C:13-8 or N.J.S.A. §2C:13-9] may bring a civil action in any court of competent jurisdiction against the actor and all those acting in concern with the actor."

198.    As such, Plaintiff is a victim of sex trafficking within the meaning of N.J.S.A. §2C:13-8 or N.J.S.A. §2C:13-9 and is therefore entitled to commence a civil action against the Defendants under N.J.S.A. §2C:13-8.1.

199.    Defendants' acts, omissions, and commissions, taken separately or together, and outlined in all of the paragraphs of this Complaint, constitute a violation or multiple violations of N.J.S.A. §2C:13-8.1 et seq.

200.    Each Defendant had a statutory obligation not to benefit financially from a venture that they knew or should have known was engaged in the sex trade at their respective hotels or motels.

201.    At all relevant times, Defendants breached this duty by knowingly participating in and facilitating the harboring and provision of Plaintiff for purposes of commercial sex transactions induced by force, fraud, or coercion by the Defendants' acts, omissions, or commissions.

202.    Defendants have financially benefited as a result of these acts, omissions, or commissions by keeping operating costs low and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trafficking trade.

203.    Defendants have directly benefited from the trafficking of Plaintiff each time they received payment for any use at the hotels or motels where Plaintiff was forced to prostitute himself or was forced into the sex trade by Tom Roe or his associates.

204.    The actions, omissions, or commissions alleged in this Complaint were the cause, either actual or proximate, for Plaintiff's physical injuries, psychological injuries, and other damages.

205.    Plaintiff pleads that this action is timely as to all pleaded occurrences due to Plaintiff's incapacity and inability to bring a claim until he became free of Tome Roe's and his associates' influence and threats, due to the continuing tort doctrine, and because Defendants are estopped from raising the statute of limitations as a defense.  Thus, Plaintiff's causes of action are timely under the doctrines of continuing tort, disability, equitable tolling, estoppel, and all other applicable state and federal laws, statutes, and regulations.

206.   As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff in violation of N.J.S.A. §2C:13-8 *et seq*.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC., f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

207.   Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "206", including the Preliminary Statement, as if stated herein with specificity and particularity.

208.   At all times relevant, each of the Defendant hotel or motel ventures acted through their agents and employees, and the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International, Inc., f/k/a Starwood Hotels & Resorts, Inc., were the agents of their respective Franchisee hotels or motels (or vice-versa), and their acts and omissions were all in the scope of their employment or agency.

209.   Because Plaintiff was a hotel or motel guest at each hotel or motel venture's respective property, each Defendant had a duty of care to take reasonable precautions not to harbor or provide a safe haven for the sex trade and thus sex trafficking.  Without limiting the generality of the foregoing, Defendants had a duty to:

a.  Have knowledge of the signs of sex trafficking;

b.  Have awareness of the degree of prostitution taking place in their hotels or motels;

c.  Recognize when people or minors of any gender could be victims of sex trafficking;

d.  Provide adequate incentives to hotel or motel employees not to acquiesce to or, worse, facilitate the sex trade in their hotels or motels;

e.  Provide adequate training to hotel or motel employees to avoid facilitating sex trade businesses and prostitution in their hotels or motels in states where prostitution is illegal;

f.  Properly train employees for dealing with suspected prostitution or sex trafficking, including alerting law enforcement, in light of the warning signs provided by government authorities and common sense;

g.  Properly monitor and record the public areas of their  hotels or motels via cameras to ensure the safety of their guests; and

h.  Recognize when a guest is under the influence of substances or otherwise incapacitated to the point of not being in control of themselves and therefore unable to escape or consent to any sexual activity.

210.   Each Defendant knew or should have known of the risks to Plaintiff.

211.    At all times mentioned, Defendants and each of them knew of the regulations and laws cited herein and knew that the wellbeing and health of their guests were at risk whenever they failed to meet such duties.

212.    Each Defendant hotel or motel knew or should have known that their routine failure to adhere to their duties created an unacceptable risk of severe injury and emotional distress to Plaintiff and others like him.

213.    Each Defendants' actions (whether directly or through their agents or employees) were done with knowledge or reckless disregard of what was occurring to Plaintiff, and Defendants' employees' active participation in allowing Plaintiff to be used in the sex trade and sex trafficking is outrageous conduct. Defendants' conduct alleged herein demonstrates reckless disregard for Plaintiff, his health and safety, and his plight.  Thus, Defendants' despicable conduct subjected Plaintiff to cruel, wicked, and unjust hardship in conscious disregard of Plaintiff's rights.

214.    As a further result of Defendants' conduct, Plaintiff was forced to endure great pain, mental anguish, shock, humiliation, feelings of helplessness, and desperation for years in addition to and on top of the physical abuse.

215.    Each Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was being subjected to Tom Roe's and his associates' abusive conduct.  Each Defendant knew of the propensity for abuse and violence taking place in their hotels or motels.

216.    Plaintiff has suffered for more than a decade's worth of severe emotional distress, including humiliation, mental and emotional suffering, anguish, freight, horror, nervousness, grief, anxiety, worry, shock, and shame, and he continues to live with it and will likely have to live with it for the rest of his life. He lacks the means and insurance to seek proper and continuous treatment.

Each Defendant's acts and omissions were a substantial factor in causing Plaintiff's severe emotional trauma and distress.

217.    Each Defendant's acts or omissions were the result of oppression or malice against Plaintiff because they were recklessly indifferent to Plaintiff's wellbeing.

218.    Plaintiff pleads that this action is timely as to all pleaded occurrences due to Plaintiff's incapacity and inability to bring a claim until he became free of Tome Roe's and his associates' influence and threats, due to the continuing tort doctrine, and because Defendants are estopped from raising the statute of limitations as a defense.  Thus, Plaintiff's causes of action are timely under the doctrines of continuing tort, disability, equitable tolling, estoppel, and all other applicable state and federal laws, statutes, and regulations.

219.    Plaintiff seeks all compensable damages, punitive damages, equitable relief, disgorgement, attorneys' fees, and actual costs of bringing this lawsuit.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC. f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT FOUR: NEGLIGENCE**
**(Against All Defendants)**

220.    Plaintiff hereby repeats, reiterates, realleges and incorporates all previous paragraphs 1 through 203, including the Preliminary Statement, as if stated herein with specificity and particularity.

221.    Each Defendant, including the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International, Inc. f/k/a Starwood Hotels & Resorts, Inc., owed Plaintiff a duty of care to take reasonable measures to ensure that he was not being subjected to sex trafficking and criminal abuse on their premises.

222.    Each Defendant owed a duty to the Plaintiff to use reasonable care to ensure the safety, care, wellbeing, and health of Plaintiff while he was on the premises of their hotels or motels.

223.    Further, each Defendant's duties encompassed the hiring, screening, appointment, retention, training, or supervision of their employees that would have otherwise provided a safe environment for Plaintiff at the hotels or motels owned, operated, controlled, managed, or maintained by Defendants.

224.    Each Defendant knew or should have known from the open and obvious signs that Plaintiff was a victim of sex trafficking or a victim of the Defendants' joint business venture with Tom Roe and his associates.

225.    Defendants breached their duty of care owed to Plaintiff and were negligent for failing to protect Plaintiff from the joint business venture they engaged in with Tom Roe or his associates across each state where Defendants failed to prevent Plaintiff's ordeal from continuing.

226.    Defendants knew or should have known based on the obvious and visible signs that Plaintiff was being abused, assaulted, controlled, drugged, forced, and otherwise exploited—sexually or otherwise—while at their hotels or motels.

227.    Despite their knowledge regarding the sexual exploitation of Plaintiff, Defendants took no remedial action, did not conduct a good faith investigation, or take any other actions whatsoever to ensure the health and safety of Plaintiff.

228.    Defendants also failed to act regarding the hiring, screening, appointment, retention, training, or supervision of Defendants' employees who knowingly or recklessly permitted Plaintiff to be continually exploited, sexually or otherwise, on the Defendants' premises and within the scope and course of employment.

229.    At all times relevant to this Complaint, Defendants had grossly inadequate policies and procedures to protect sex trafficking victims, including Plaintiff..

230.    As a direct and proximate cause of Defendants' negligence, whether gross, careless, or reckless, Plaintiff was sex trafficked, sexually exploited, abused, assaulted, and continually victimized at Defendants' hotels or motels.

231.    The actions, omissions, commissions, or lack thereof of each Defendant, whether taken separately or together, constitute negligence, and said negligence as outlined in this Complaint is the cause of Plaintiff's injuries and damages.

232.    Plaintiff has been injured and damaged under common law negligence, as well as all applicable state or federal laws, statutes, or regulations for negligence due to the continual ordeal Plaintiff suffered.

233.    Plaintiff's negligence claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

234.    As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC., f/k/a TARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## <u>COUNT FIVE</u>: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

235.    Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "235", including the Preliminary Statement, as if stated herein with specificity and particularity.

236.    Each Defendant, including the Franchisor Defendants (Super 8 Worldwide Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International Inc, f/k/a Starwood Hotels & Resorts, Inc.), owed Plaintiff a duty of care to take reasonable measures to ensure that he was not being subjected to sex trafficking and criminal abuse on their premises.

237.    Each Defendant also owed a duty to the Plaintiff to use reasonable care to ensure the safety, care, wellbeing, and health of Plaintiff while he was on the premises of their hotels or motels.

238.    Each Defendant breached its duty to Plaintiff.

239.    At all times relevant to this Complaint, each of the Defendant hotel or motel business ventures acted through their agents, employees, or other authorized individuals, and the Franchisor Defendants, Super 8 Worldwide Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International Inc., f/k/a Starwood Hotels & Resorts, Inc., were agents of their respective Franchisee hotels or motels(or vice-versa), and their acts and omissions were all in the scope of their employment or agency.

240.    Since Plaintiff was a guest or customer of the hotels or motels at each Defendant's hotel or  motel venture's respective premises, each Defendant had a duty of care to take reasonable precautions not to harbor or provide a safe haven for sex trafficking or forced prostitution.

241.    Without limiting the generality of the foregoing, each Defendant had a duty to:

    a.    have knowledge of the signs of sex trafficking;

    b.    have an awareness of the degree of the sex trade or forced prostitution businesses taking place in their hotels or motels;

    c.    recognize when people or minors of any gender could be victims of sex trafficking or forced prostitution;

    d.    provide adequate incentives to hotel or motel employees or agents not to acquiesce or, worse, to facilitate the sex trade in their hotels or motels;

e.  provide adequate training or supervision to hotel or motel employees or agents to avoid facilitating forced prostitution in their hotels or motels in their states where prostitution is illegal;

f.  properly train or supervise employees or agents of the hotels or motels for dealing with suspected prostitution or sex trafficking, including alerting law enforcement, in light of the warning signs provided by government authorities and commonsense;

g.  properly monitor and record the public areas of their hotels or motels via cameras to ensure the safety of their guests and customers; and

h.  recognize when a guest or customer is under the influence of substances or otherwise incapacitated to the point of not being in control of themselves and thus unable to escape or consent to any sexual activity.

242.  Each Defendant knew or should have known of the risks to Plaintiff.  At all times mentioned, Defendants and each of them knew of the need for the regulations and laws and that the lives and health of their guests or customers were at risk whenever Defendants failed to meet such duties.

243.  Each Defendant hotel or motel venture knew or should have known that their routine failure to adhere to their duties created an unacceptable risk of severe injury, psychological distress, and mental anguish to Plaintiff and others like him.

244.  Each Defendant's actions or omissions (whether directly or through their agents or employees) were done with negligent disregard of what was occurring to Plaintiff and the outrageous conduct of Defendants' employees or agents in allowing Plaintiff to be sex trafficked or forced to prostitute himself.

245.   Defendants' conduct alleged herein demonstrates negligent disregard for Plaintiff, his health and safety, and his plight.  Thus, Defendants' despicable conduct subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

246.   Each Defendant acted with negligent disregard of the probability that Plaintiff would suffer emotional distress or psychological harm, knowing that Plaintiff was being subjected to Tom Roe's or his associates' abusive conduct.  Each Defendant knew of the propensity for abuse and violence taking place in their hotels or motels.  As a result of Defendants' conduct, Plaintiff was forced to endure great pain, mental anguish, shock, humiliation, feelings of helplessness and desperation for *years*.

247.   Plaintiff has suffered more than a decade's worth of severe emotional distress, including humiliation, mental and emotional suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and shame, and he continues to live with it and will likely have to live with it for the rest of his life.  He lacks the means and insurance to seek proper treatment and care. Each of Defendant's acts and omissions were a substantial factor in causing Plaintiff's severe emotional distress and psychological harm.

248.   As a direct and proximate cause of Defendants' negligence, whether gross, careless, or reckless, Plaintiff sustained severe and serious harm, including, but not limited to, severe emotional distress and psychological harm, all to his damage in a sum within this Court's jurisdiction and to be shown according to proofs.

249.   The actions, omissions, commissions, or lack thereof of each Defendant, whether taken separately or together, constitute negligence, and said negligence as outlined in this Complaint is the cause of Plaintiff's emotional distress and psychological harm or similar injuries.

250.    Due to their negligence, each Defendant is therefore liable to Plaintiff for the damages he suffered, including, but not limited to, his lost earnings and lost earning capacity due to  more than a decade of time he lost since he was first sex trafficked as a minor, as well as the physical injuries—the amputation of his leg—and the fact that he never had the chance to develop a career of his own or have a normal life.

251.    The fact that Plaintiff now has to live with the fear, stigma, shame, and mental anguish of being a sex trafficking victim, and his pain, suffering and physical scars of his plight, and his extreme emotional distress and physical injuries, including, but not limited to, his amputated leg, are due to the acts, omissions or lack thereof of Defendants.

252.    All such damages are the foreseeable and proximate result of Defendants' acts or omissions.

253.    Each Defendant's acts and omissions proximately caused Plaintiff to suffer and continue to suffer anguish, fear, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, such that an ordinary, reasonable person would be unable to cope with it.

254.    Plaintiff continues to have trouble sustaining himself financially.

255.    Each of Defendants' negligent acts or omissions were a substantial factor in causing Plaintiff's severe emotional distress or psychological harm.

256.    Plaintiff has been injured and damaged under common law negligence, as well as all applicable state or federal laws, statutes, or regulations for negligence due to the continual ordeal Plaintiff suffered.

257.    Plaintiff's claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

258.    As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC. f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

<u>**COUNT SIX**</u>**: NEGLIGENCE VIA VICARIOUS LIABILITY**
**(Against All Defendants)**

259.    Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "258", including the Preliminary Statement, as if stated herein with specificity and particularity.

260.    Defendants are further liable for the acts and omissions of their franchisees or contractual agents due to the Owners/Franchisor Defendants' negligent failure to (i) identify the proper operators to serve as franchisees or contractual agents; (ii) train or supervisor their franchisees or contractual agents; (iii) create and implement anti-trafficking measures; and (iv) train and monitor their franchisees' or contractual agents' compliance with said measures.

261.    If any Defendant is found not to be directly liable to Plaintiff, they are liable under all counts of this Complaint under one or more of the foregoing referenced doctrines.

262.   Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of aiding and abetting or a similar applicable state or federal doctrine, law, statute, or regulation:

a. Each Defendant gave substantial assistance, comfort or encouragement to Tom Roe or his associates to perpetrate their sex trafficking scheme and violence against Plaintiff;

b. Each Defendant, directly or through one or more of its employees or agents, actively took part in Plaintiff's trafficking, or furthered it by cooperating with Tom Roe or his associates, or ratified and adopted their actions so that the joint ventures could make money, avoid detection, and continue as a business; and

c. Each Defendant's conduct was a substantial factor in causing harm to Plaintiff and perpetuating his trafficking because without the hotels or motels, permitting the sex trafficking or forced prostitution would not have occurred.

263.   Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of *respondeat superior* or a similar applicable state or federal doctrine, law, statute, or regulation:

a. Each of the named Defendants herein acting through their agents or employees are liable for the acts and omissions of their agents or employees giving rise to liability;

b. For each of the respective Defendant hotel or motel ventures described, the owners, management companies, affiliates, employees, or agents, and, as applicable, franchisors were the agents of each other, if not the employees of each Defendant, and at all times were acting in the scope of the agency or employment;

c. For the hotel or motel employees, their tortious conduct is chargeable to the hotel or motel owners, management companies, or affiliates because their acts or omissions were in the scope of their employment or in the scope of agency in a way that was inherent in their employment duties and was conduct that was a natural outgrowth of their employment or agency duties under the risk-of-the-enterprise doctrine; and

d. Each Defendant or the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International, Inc. f/k/a Starwood Hotels & Resorts, Inc., are vicariously liable for the acts or omissions of their own employees, agents, or affiliates.

264.     Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of a joint enterprise or a similar applicable state or federal doctrine, law, statute, or regulation:

a. Each Defendant or the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International, Inc. f/k/a Starwood Hotels & Resorts, Inc., are vicariously liable for the acts or omissions of their franchisees or contractual agents and vice versa under the theory of joint enterprise liability;

b. Each Defendant or Franchisor Defendants (in their capacity as such) formed a joint venture with their respective hotel or motel ventures because (i) each intended to combine their relative property, skills, knowledge, and operations of the hotel or motel for the purposes of carrying out a single business (the franchised hotel business at issue); (ii) each of the Defendants or Franchisor Defendants and each

of their respective franchisees or contractual agents had a relevant ownership or management interest in the franchised hotel or motel, business; (iii) each of Defendants or Franchisor Defendants and their franchisee or contractual agents had a right to control the business—per their appliable agreements—the hotel or motel owners/franchisees controlled the day-to-day operations while the franchisor/owner controlled the macro aspects of the business; and (iv) upon information and belief, they shared the profits and each shared losses in that they bore, at a minimum, some or all of their respective unrecouped costs if the business never made a profit; and

    c. Each joint enterprise is alleged to have been made actually and by apparent authority to Plaintiff.

265. Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of concerted action or a similar applicable state or federal doctrine, law, statute, or regulation.

    a. Each Defendant or the Franchisor Defendants, Super 8 Worldwide, Inc., Wyndham Hotels & Resorts, Inc., Hyatt Hotel Corporation, and Marriott International, Inc. f/k/a Starwood Hotels & Resorts, Inc., are vicariously liable for the acts or omissions of their franchisees or contractual agents and those franchisees' or contractual agents' employees and agents, and vice versa under the theory of concerted action;

    b. Each Defendant or Franchisor Defendant within each joint venture worked towards a common goal of building and maintaining the hotel business at each respective hotel or motel;

c.  Each Defendant knew or should have known that they were engaging in and materially assisting a sex trade operation in their hotels or motels, which they knew or should have known could violate a duty of care owed to Plaintiff;

d.  Each of the Defendants or Franchisor Defendants (in their capacity as such) intended to combine their relative property, skills, knowledge, and operations of the hotel or motel for the purposes of carrying out a single business (the franchised businesses at issue);

e.  Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a relevant ownership interest in the franchised hotel or motel business;

f.  Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a right to control the business (per all appliable contractual agreements), and the hotel or motel owners/franchisees controlled the day-to-day operations while the Defendants or Franchisor Defendants controlled the macro aspects of the business, and had the right to take control of the franchised hotel, motel, or club business;

g.  Upon information and belief, each Defendant shared the profits and each shared losses in that they bore, at a minimum, some or all of their respective unrecouped costs if the business never made a profit.

266.  As to each Defendant who contends they did not personally commit any of the acts that would give rise to liability, it is pleaded that said Defendant is liable through one or more of the doctrines mentioned above or legal theories.

267.     Under those doctrines or legal theories, each Defendant is liable for Plaintiff's harm, whether physical, psychological, or otherwise.

268.     Each Defendant's acts or omissions under one or more of the above doctrines or legal theories were a substantial factor in causing harm to Plaintiff and perpetuating Plaintiff's sex trafficking or exploitation.

269.     Plaintiff's claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

270.     Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct caused Plaintiff to suffer substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC., f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

<u>**COUNT SEVEN**</u>**: PUNITIVE DAMAGES**
**(Against All Defendants)**

271.     Plaintiff hereby repeats, reiterates, realleges, and incorporates all previous paragraphs "1" through "270", including the Preliminary Statement. as if stated here with specificity and particularity.

272. Due to the acts or omissions of Defendants, either separately or together, Plaintiff is entitled to an award for punitive damages to deter Defendants from similar wrongful conduct.

273. Defendants' conduct in allowing, either knowingly or recklessly, Plaintiff to physically and emotionally suffer from Tom Roe's or his associates' continuous sexual exploitation at their premises warrants a strong deterrent and punishment.

274. Each Defendants' conduct, either separately or together, was so egregious and outrageous that further discouragement is required because the harm suffered by Plaintiff was a deliberate act or omission that was foreseeable due to the gross, reckless, and careless actions of Defendants.

275. Plaintiff's claims for punitive damages are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

276. Moreover, each Defendants' knowingly or recklessly malicious conduct caused Plaintiff to suffer substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in punitive damages.

**WHEREFORE**, Plaintiff, JOHN DOE, a Sex Trafficked Individual, demands judgment from Defendants, HARBORSIDE HOTEL LLC, HYATT HOTEL CORPORATION, MARRIOTT INTERNATIONAL, INC., f/k/a STARWOOD HOTELS & RESORTS, INC., SAM & RAM CORP., SUPER 8 WORLDWIDE, INC., WYNDHAM HOTELS & RESORTS, INC., TOM ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## VII.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38(b), a demand for a jury trial is made as to all triable issues.

## VIII.

## LOCAL RULE 11.2 CERTIFICATION

The undersigned certifies that, to his knowledge, the matter in controversy is not the subject of any other action pending in this Court or another court.

Dated: February 18, 2025
Newark, New Jersey

**SBAITI & COMPANY NJ LLC**
Attorneys for Plaintiff, JOHN DOE, a Sex
Trafficked Individual

By: _____

MATTHEW B. SICHERI
100 Mulberry Street
3 Gateway Center, Suite 1102
Newark, New Jersey 07102
P: (973) 954-2000
F: (973) 954-9710
E: matthew.sicheri@sbaitilaw.com

Kevin N. Colquitt, Esq.
Texas State Bar No.: 24072047
*Pro Hac Vice motion forthcoming*
SBAITI & COMPANY PLLC
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
P: (214) 432-2899
E: knc@sbaitilaw.com